MacKNIGHT FLINTIC STONE CO. v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department.   January 9, 1903.)

1. SUBCONTRACTOR — LIEN — PERFORMANCE OF CONTRACT — EVIDENCE — SUFFI-
   CIENCY.
       In an action to foreclose a mechanic's lien for materials furnished and
   work performed under a subcontract, evidence examined, and *held* that
   the subcontractor had failed to perform its part of the contract, and was,
   therefore, not entitled to a lien.
2. SAME—MISCONSTRUCTION OF CONTRACT BY CONTRACTOR—EFFECT.
       The fact that the main contractor's construction of a contract with a
   subcontractor was erroneous in one detail did not justify the subcontractor
   in failing to perform other work concededly within the contract.
       Patterson, J., dissenting.

Appeal from special term, New York county.

Proceedings by the MacKnight Flintic Stone Company against
the city of New York and another to foreclose a mechanic's lien.
From a judgment for defendants, plaintiff appeals.   Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON,
INGRAHAM, and LAUGHLIN, JJ.

L. Laflin Kellogg, for appellant.

Louis Marshall, for respondents.

LAUGHLIN, J.   This is an action to foreclose a mechanic's lien
filed pursuant to the provisions of chapter 315 of the Laws of 1878
against the moneys due or to grow due under a contract made be-
tween one Peter J. Brennan and the city of New York for the con-
struction of Public School No. 177.   The plaintiff claims a lien for
materials furnished and work performed under a subcontract with
Brennan.   On the 2d day of May, 1900, the plaintiff, by a proposition
in writing addressed and delivered to Brennan, offered to "furnish
all the labor and material necessary to lay flintic stone as follows:
No. 109, cellars, areas, courts, and sidewalks.   No. 177, cellar, areas,
yard, vestibules.   All for the sum of fifty-nine hundred dollars ($5,-
900).   All the excavation and grading to be done by you."   Bren-
nan also had a contract with the city for the construction of public
school No. 109, and both parties agree and concede that the plain-
tiff's contract with him relating to work upon both schools was en-
tire.   To the plaintiff's proposition Brennan replied in writing on
the same day:   "Your estimate to lay the artificial stonework of
P. S. 109 and P. S. 177 according to the plans and specifications of
C. B. J. Snyder, Supt. School Bldgs., for the sum of fifty-nine hun-
dred dollars ($5,900), is hereby accepted."   It will be observed that
the proposition as accepted by Brennan materially modified the prop-
osition of the plaintiff; but this seems to have been understood by
the parties, and the plaintiff acquiesced in Brennan's proposition
without any further conversation or communication, and proceeded
with the work.   In the specifications for Public School No. 177, to
which Brennan's acceptance related, under the heading, "Artificial
Stone Pavements, Asphalt, etc.," were embraced specifications of
what is described as "artificial stone pavements," covering the yard

and certain parts of the cellar and boiler room, and also specifications for certain concrete foundations to be covered with asphalt, and they also contain, among other things, the following paragraph:

"The surface of the pupils' water-closets and playrooms in basement is to be excavated 12 inches below floor level, then to be covered 7½ inches deep with cinder concrete and 4 inches of cement put down as described for artificial stone pavement, and the top finished with ½ inch of asphalt, as above described."

During the progress of the work a controversy arose between Brennan and the plaintiff over the clause of the specification quoted. Brennan contended that it was the duty of the plaintiff, under its contract with him, to lay the concrete foundation for the asphalt, and the plaintiff insisted that this was not within its contract. Thereupon Brennan refused to make any further payments to the plaintiff until this work was done. It will be observed that under the contract as made between the parties Brennan was under no obligation to make any payment to the plaintiff before the completion of the work. At an interview between Brennan and the plaintiff's president, however, subsequent to the making of the contract according to the testimony of this official, Brennan said "that he would pay us for this work as it progressed satisfactorily." This was apparently purely voluntary, and constituted no part of the contract, and Brennan testified that the conversation on the subject was after part of the work had been performed. It further appears that upon the trial the learned counsel for the appellants did not contend that partial payment as the work progressed constituted part of the contract, nor does he so contend here. The plaintiff gave evidence tending to show that Brennan, in ordering it to lay this concrete foundation for the pupils' water-closets and playrooms, stated that unless it complied with his request in this regard, he would not permit it to proceed with the other unfinished work on School No. 109, and that thereupon it suspended work. Subsequently, and on the 26th day of September, 1900, it addressed a letter to Brennan, referring to this controversy, in which it stated "that, until this understanding on your part is settled, and the difference adjusted between us, we must respectfully decline to proceed with the work under this contract." It was further testified on the part of the plaintiff that on the 6th of October thereafter it wrote a letter to Brennan in effect asking if he would permit it to complete its contract without doing the work in dispute. The evidence on the part of the plaintiff that Brennan refused to permit it to proceed with any of the work on account of this controversy was controverted by the testimony of Brennan, who, on the contrary, testified that he requested the plaintiff to proceed with the other work; that he never received its letter of October 6, 1900, and that he formally notified it to complete its contract work within a time specified, and on its failure to do so he performed the work himself. This became a question of fact, which the trial court has determined in favor of the respondents, and such determination is fairly sustained by the evidence. It thus appears that the plaintiff, not Brennan, violated the contract. It is, therefore, unnecessary to decide whether the laying of the concrete

foundation, which gave rise to the controversy, was included in the plaintiff's contract with Brennan; for, if Brennan's construction of the contract was erroneous, that did not justify the plaintiff in failing to perform the other work concededly within its contract. It was its duty to proceed with the performance of its contract work, and the court has found that it was not prevented from performing the same by Brennan. Having failed to show complete performance of its contract, which was entire, or that performance was prevented by Brennan, it is not entitled to recover that part of the work which it performed; and consequently nothing was due or owing to it on account of which a lien could be filed.

The trial court therefore properly dismissed the complaint, and the judgment should be affirmed, with costs.

VAN BRUNT, P. J., and INGRAHAM and HATCH, JJ., concur. PATTERSON, J., dissents. .